# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00502-SCT

*CLINT BALDWIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/97 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL R. FARROW |
| | CARRIE A. JOURDAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/11/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. Clint Baldwin was convicted in the Circuit Court of Lowndes County, Honorable Lee J. Howard, Circuit Judge, presiding, of the crime of sale of cocaine. He was thereafter sentenced to a term of twenty-eight years in the custody of the Mississippi Department of Corrections, and to pay a fine of $50,000. Feeling aggrieved of the judgment thus entered against him, Baldwin appeals, raising the following as issues:

> **I. THE COURT'S DENIAL OF THE DEFENDANT'S MOTION FOR CHANGE OF VENUE OR, ALTERNATIVELY, A CONTINUANCE UNTIL AFTER TRIAL ON OTHER SERIOUS CHARGES, WHICH HAD BEEN THE SUBJECT OF SUBSTANTIAL PREJUDICIAL PRE-TRIAL PUBLICITY, DENIED THE DEFENDANT HIS RIGHT TO SECURE A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

**II. THE COURT'S REFUSAL TO QUASH THE VENIRE, BASED ON THE RESPONSES OF POTENTIAL JURORS OBTAINED DURING VOIR DIRE, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

**III. THE COURT'S REFUSAL TO ALLOW INDIVIDUAL VOIR DIRE OF POTENTIAL JURORS, WHEN APPROXIMATELY ONE-THIRD OF THE VENIRE INDICATED THEY HAD HEARD OF THE DEFENDANT, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

**IV. THE COURT'S REFUSAL TO INSTRUCT THE JURY DURING VOIR DIRE THAT, IF SELECTED FOR THE TRIAL JURY AND AFTER FURTHER REFLECTION, THEY WISHED TO CORRECT THEIR PREVIOUS RESPONSES, AFTER TRIAL HAD BEGUN, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

**V. THE COURT'S DENIAL OF THE DEFENDANT'S BATSON CHALLENGE ALLOWED FOR THE SYSTEMATIC EXCLUSION OF A DISPROPORTIONATE NUMBER OF THE JURORS OF THE DEFENDANT'S RACE, WHICH DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

**VI. THE COURT'S DENIAL OF THE DEFENDANT'S MOTION TO SEQUESTER THE JURY DURING THE TRIAL TO SHIELD JURORS FROM PUBLICITY REGARDING THE DEFENDANT'S OTHER PENDING CHARGES, NAMELY CAPITAL MURDER, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

**VII. THE COURT'S GRANTING OF THE STATE'S MOTION TO MATERIALLY AMEND THE INDICTMENT, ON THE DATE OF TRIAL, AND ALLOW TESTIMONY THAT RELATED TO THE AMENDMENT, PREJUDICED THE DEFENDANT'S ABILITY TO PROPERLY PREPARE FOR TRIAL, DENYING HIM DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION.**

**VIII. THE COURT'S REFUSAL TO STRIKE THE TESTIMONY OF STATE'S**

**WITNESS, RHONDA PRICE, AS TO PREVIOUS UNINDICTED SALE OF PILLS TO HER BY THE DEFENDANT WAS NOT IN ACCORDANCE WITH THE LAW AND DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION.**

**IX. THE COURT'S REFUSAL TO GRANT THE DEFENDANT'S THEORY OF THE CASE INSTRUCTION AND TO INSTRUCT THE JURY THAT CERTAIN IMPROPER ARGUMENT BY THE STATE SHOULD NOT BE CONSIDERED PREJUDICED THE JURY'S DELIBERATIONS AND DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION.**

**X. THE COURT'S IMPROPER CONSIDERATION OF THE STATE'S EVIDENCE OF AGGRAVATION, NAMELY THE DEFENDANT'S PENDING CHARGES OF CAPITAL MURDER AND INTIMIDATING A WITNESS AND THE RESULTING SENTENCE IMPOSED BY THE COURT, DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION AND HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED BY THE 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

## STATEMENT OF THE FACTS

¶2. On March 27, 1996, Rhonda Price, a confidential informant and acquaintance of appellant Clint Baldwin (hereafter Baldwin), met with local narcotics agents, Larry Taylor and Robert Grimes and special undercover agent Shelly Arnold. At that meeting, Ms. Price's vehicle was equipped with a video camera and microphone to record any and all subsequent events.

¶3. At approximately 3:45 p.m., that same day, Price and Arnold were cruising the parking lot of the Morningside Apartments, when Price spotted the defendant and pulled over. Subsequently, various individuals, including Baldwin, approached the vehicle to sell the occupants cocaine. Baldwin sold a $20 rock of cocaine to the undercover agent, Shelly Arnold. Baldwin was later arrested for sale of cocaine in May 7, 1996, tried and found guilty on May 14, 1997.

## DISCUSSION OF LAW

¶4. We will consider each of Baldwin's issues raised on appeal in sequence:

**I. THE COURT'S DENIAL OF THE DEFENDANT'S MOTION FOR CHANGE OF VENUE OR, ALTERNATIVELY, A CONTINUANCE UNTIL AFTER TRIAL ON OTHER SERIOUS CHARGES, WHICH HAD BEEN THE SUBJECT OF SUBSTANTIAL PREJUDICIAL PRE-TRIAL PUBLICITY, DENIED THE DEFENDANT HIS RIGHT TO SECURE A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH**

**AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

¶5. On February 18, 1997, Baldwin filed a motion for change of venue with the Lowndes County Circuit Court. The basis for the motion is the fact that at about the same time that Baldwin was incarcerated on the sale of a controlled substance charge, he was also indicted for the kidnaping and murder of Elizabeth Dill. Baldwin argued that because of the incredible media coverage surrounding the capital murder charge, he could not possibly receive a fair trial on the sale of cocaine charge.

¶6. A hearing on this change of venue motion was held on February 19, 1997. In support of this motion, Baldwin called his former attorney, and a local practicing attorney, both of whom stated that this case had received a tremendous amount of media coverage and neither believed that Baldwin could get a fair trial in Lowndes County. Baldwin also introduced a video compilation of numerous local news stories and a compilation of printed news stories concerning the kidnaping and murder of Elizabeth Dill wherein Baldwin was one of the prime suspects.

¶7. In rebuttal, the State called Greg Andrews, Lowndes County Tax Assessor, Charles Younger, the Chancery Court Clerk, and J.L. Williams, a Supervisor of the Lowndes County Board of Supervisors. These three county officials all testified that they believed Baldwin could get a fair trial in Lowndes County. The Circuit Court Judge withheld ruling on this motion until after jury selection had been conducted at which time the Judge overruled the motion.

¶8. Baldwin makes much of both United States Supreme Court and Mississippi Supreme Court decisions dealing with change of venue in capital cases such as *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), *Johnson v. State*, 476 So. 2d 1195, 1210 (Miss. 1985), *Fisher v. State*, 481 So. 2d 203 (Miss. 1985). However, the present case is not a capital case, rather Baldwin is being tried for the sale of a controlled substance, cocaine.

¶9. The State aptly addresses the inappositeness of Baldwin's cases. "[Baldwin's] cases were capital cases, and that point was emphasized throughout the opinions. This is not a capital case." The State proposes two reasons why this Court should not reverse the Circuit Court's refusal to grant the change of venue motion. First, the State claims that the motion for change of venue was statutorily deficient. Second, assuming the motion was proper, the Circuit Judge was acting in his sound discretion in refusing the change of venue and his ruling should not be disturbed by this Court.

¶10. The State is correct on both points. First, an application for change of venue must conform strictly to the statute. See *Purvis v. State*, 71 Miss. 706, 14 So. 268 (1894). Mississippi's change of venue statute is found at Miss. Code Ann. § 99-15-35 (1994). It states:

> On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.

¶11. The application for change of venue is statutorily deficient because, although appellant provided the form affidavits of two Lowndes County citizens, the motion for change of venue itself was not "sworn to by

the prisoner" as is specifically required by Miss. Code Ann. § 99-15-35 (1994). Because of the statutory deficiency in the change of venue motion this Court upholds the Circuit Court Judge's refusal to grant the change of venue motion.

¶12. Even assuming arguendo that the motion for change of venue was proper, the trial court's ruling should still be affirmed. The State correctly argues that "it is beyond peradventure that motions for change of venue are largely addressed to the sound discretion of the trial court." *Morgan v. State*, 681 So. 2d 82, 91 (Miss. 1996). As in *Morgan*, assuming the motion for change of venue was proper, Baldwin creates only a rebuttable presumption (upon attachment of two or more affidavits from citizens of the county) that he cannot get a fair trial in Lowndes County due to the publicity. However, that presumption can be rebutted by the State. In the instant case, after hearing from two of Baldwin's witnesses at the hearing on the motion for change of venue, the trial court then heard from three State witnesses who testified that Baldwin could get a fair and impartial trial in Lowndes County. In *Morgan*, the Court applied the elements outlined in *White v. State*, 495 So. 2d 1346, 1349 (Miss. 1986), which serve to indicate an irrebutable presumption of prejudice:

> (1) Capital cases based on considerations of a heightened standard of review;
>
> (2) Crowds threatening violence towards the accused;
>
> (3) An inordinate amount of media coverage, particularly in cases of
>
> a) serious crimes against influential families;
>
> b) serious crimes against public officials;
>
> c) serial crimes;
>
> d) crimes committed by a black defendant upon a white victim;
>
> e) where there is an inexperienced trial counsel.

*Morgan*, 681 So. 2d at 92.

¶13. Applying these elements to the instant case, it is clear that Baldwin cannot claim that the presumption of prejudice here is irrebutable. "Where . . . the evidence is conflicting on the question of whether or not the defendant could receive a fair and impartial trial, this Court will generally defer to the considered opinion of the trial judge." *Burrell v. State*, 613 So. 2d 1186, 1190 (Miss. 1993). As there was credible evidence on both sides of this argument in the present case, the trial court decision to not grant the motion for change of venue is affirmed.

> **II. THE COURT'S REFUSAL TO QUASH THE VENIRE, BASED ON THE RESPONSES OF POTENTIAL JURORS OBTAINED DURING VOIR DIRE, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

¶14. After the voir dire examination was completed, Baldwin moved the trial court to quash the venire

arguing that of the entire venire of forty-seven (47) jurors selected for service, over sixteen (16) of them had been exposed to pretrial publicity concerning the defendant on the charge of capital murder leaving only twenty-six (26) jurors in the venire who Baldwin would feel were qualified to serve as jurors. The State argued that the jurors who had responded to Baldwin's voir dire question concerning whether they had heard anything about Mr. Baldwin through the media were not asked about the capital murder case.

¶15. The State points to *Burney v. State*, a case where the defendant was being tried for attempted armed robbery and burglary of an inhabited dwelling with deadly weapon, and the Court upheld the trial court's refusal to grant a change of venue motion where forty-four (44) of sixty (60) prospective jurors had either heard something of the case or knew the victims personally. *Burney v. State*, 515 So. 2d 1154 (Miss. 1987).

¶16. The State correctly alleges further that at Baldwin's specific request, all sixteen (16) veniremen who had responded to the question about having heard about Baldwin through the media were removed from the venire. Therefore, any potential prejudice was effectively removed. Baldwin has not shown any abuse of the trial court's discretion in overruling Baldwin's motion to quash the venire.

> ### III. THE COURT'S REFUSAL TO ALLOW INDIVIDUAL VOIR DIRE OF POTENTIAL JURORS, WHEN APPROXIMATELY ONE-THIRD OF THE VENIRE INDICATED THEY HAD HEARD OF THE DEFENDANT, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.

¶17. This issue is without merit because all of the questionable jurors were excused for cause. *Carr v. State*, 655 So. 2d 824, 843 (Miss. 1995).

> ### IV. THE COURT'S REFUSAL TO INSTRUCT THE JURY DURING VOIR DIRE THAT, IF SELECTED FOR THE TRIAL JURY AND AFTER FURTHER REFLECTION, THEY WISHED TO CORRECT THEIR PREVIOUS RESPONSES, AFTER TRIAL HAD BEGUN, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.

¶18. It is clear from the record that the Honorable Judge Lee J. Howard allowed a very thorough and fair voir dire of the venire. Baldwin has failed to show any error in the voir dire process. For these reasons, this issue is also without merit.

> ### V. THE COURT'S DENIAL OF THE DEFENDANT'S BATSON CHALLENGE ALLOWED FOR THE SYSTEMATIC EXCLUSION OF A DISPROPORTIONATE NUMBER OF THE JURORS OF THE DEFENDANT'S RACE, WHICH DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.

¶19. Once Baldwin struck for cause the sixteen (16) potential jurors who had heard of him via the media (either print or broadcast), only five (5) black panel members remained in the jury pool out of forty-seven (47) original venire members. With only five (5) black veniremen remaining, the State then used four (4) of its early peremptory challenges to strike black citizens from the venire: Katrina Powell, Wilbert Brown, Billy Ray Jackson, and Jessie Williams. Baldwin, during this time, made several Batson challenges, all of which were overruled by the trial court as having been properly explained with race neutral explanations.

¶20. Although the trial court found that Baldwin had failed to establish a prima facie case of racial discrimination in the State's use of its first couple of challenges, the State voluntarily gave its reasons for its challenges. For his first challenge of a black venireman, the prosecutor listed as reasons the following: 1) the venireman's demeanor, viz., she chewed her lip and looked at him askance out of the side of her eyes; 2) she was unemployed; 3) she was twenty-four years old; and 4) she lives in an area which is high in drug trafficking.

¶21. For his second challenge of a black venireman, the prosecutor listed as reasons the following: 1) the venireman lived and worked in areas known by the Mississippi Bureau of Narcotics as high drug areas; and 2) the venireman's demeanor, viz., he sat slouched against the wall with arms folded and would not look at the prosecutor.

¶22. For his third challenge of a black venireman, the prosecutor listed as reasons the following: 1) the venireman had a family member who had been convicted of a crime; and 2) he lived in an area of high drug activity. Although Baldwin argued that the reasons offered were pretextual, he offered no proof, and the trial court accordingly ruled that, in the absence of proof to the contrary, the reasons offered were indeed racially neutral. The prosecutor later challenged one additional black juror, giving the following reasons for that challenge: 1) the venireman had a family member who had been convicted of a crime; and 2) he lived in a high drug trafficking area. Those reasons were accepted by the court as racially neutral. Baldwin was later convicted by this jury composed of eleven (11) whites and one (1) black.

¶23. Under *Batson v. Kentucky*, 476 U.S. 79 (1986), Baldwin may establish a prima facie showing of discrimination necessary to compel the

> state to come forward with a neutral explanation for challenging black jurors if they show: 1) that he is a member of a cognizable racial group, 2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and 3) that facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities.

*Batson*, 476 U.S. at 96.

¶24. This Court in *Lockett v. State* stated that "a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." *Lockett v. State*, 517 So. 2d 1346, 1350 (Miss. 1987). The Court in *Lockett* held that a juror's demeanor was a sufficient race neutral reason to strike a potential juror. *Id.* at 1351-52. The Court also cited youth, marital status, educational background and instability as acceptable racially neutral reasons for striking a potential juror. *Id.* The Court also listed living in a "high crime area" as well as having a family member convicted of a crime as acceptable race neutral reasons in *Lockett*. *Id.* at 1356.

¶25. Baldwin claims, however, that a juror's address has never been cited in any case as a racially neutral reason. If by that, Baldwin is referring to the prosecutor's proffered race neutral explanation that several of the potential jurors lived in high drug (high crime) areas, then according to this Court's precedent in *Lockett v. State*, Baldwin is incorrect. *Id.* As this Court has recognized at least one of the reasons given for striking each of these venire members as a race neutral explanation, the trial court's denial of Baldwin's Batson challenges is affirmed.

¶26. Further support for upholding the trial court's ruling can be garnered from the recent United States Supreme Court holding in *Purkett v. Elem*, in which the Court stated:

> Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (citations omitted).

¶27. Since this Court has recognized the race neutral reasons offered by the State in this case, coupled with the knowledge that these explanations do not have to be persuasive or even plausible, plus the fact that no evidence was put on by Baldwin of a discriminatory intent on the part of the State, the trial court is affirmed.

> **VI. THE COURT'S DENIAL OF THE DEFENDANT'S MOTION TO SEQUESTER THE JURY DURING THE TRIAL TO SHIELD JURORS FROM PUBLICITY REGARDING THE DEFENDANT'S OTHER PENDING CHARGES, NAMELY CAPITAL MURDER, DENIED THE DEFENDANT HIS RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY ARTICLE 3, § § 14, 23, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION AND THE 6TH, 8TH AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.**

¶28. Baldwin loses on this issue because he did not timely request that the jurors be sequestered. Rule 10.02 of the Uniform Rules for Circuit and County Court Practice (URCCC) states as follows:

> In any case where the state seeks to impose the death penalty, the jury shall be sequestered during the entire trial.

> In all other criminal cases, the jury may be sequestered upon request of either the defendant or the state made at least 48 hours in advance of the trial. The court may, in the exercise of sound judicial discretion, either grant or refuse the request to sequester the jury. In the absence of a request, the court may, on its own initiative, sequester a jury at any stage of a trial.

¶29. Where, as here, Baldwin has failed to make a timely request to sequester the jury, this Court will not grant the appellant's appeal on that issue. *Whittington v. State*, 523 So. 2d 966, 974 (Miss. 1988).

> **VII. THE COURT'S GRANTING OF THE STATE'S MOTION TO MATERIALLY**

**AMEND THE INDICTMENT, ON THE DATE OF TRIAL, AND ALLOWING TESTIMONY THAT RELATED TO THE AMENDMENT, PREJUDICED THE DEFENDANT'S ABILITY TO PROPERLY PREPARE FOR TRIAL, DENYING HIM DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27 OF THE MISSISSIPPI CONSTITUTION.**

¶30. Mississippi Code Ann. Section 99-17-13 allows for the amendment of the indictment to change a name, as in the present case, so long as the defendant is not prejudiced and such variance is not material to the merits of the case. Such is the case here. This Court has repeatedly allowed indictment amendments under this statute. See *Wood v. State*, 155 Miss. 298, 124 So. 353, 355 (Miss. 1929); *Evans v. State*, 499 So. 2d 781, 784 (Miss. 1986). For these reasons, this issue is without merit.

**VIII. THE COURT'S REFUSAL TO STRIKE THE TESTIMONY OF STATE'S WITNESS, RHONDA PRICE, AS TO PREVIOUS UNINDICTED SALE OF PILLS TO HER BY THE DEFENDANT WAS NOT IN ACCORDANCE WITH THE LAW AND DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION.**

¶31. During the direct examination of Rhonda Price (confidential informant) by the State, testimony was allowed, over the objection of Baldwin, as to a previous sale of pills to Rhonda Price by Baldwin. Baldwin claims this was inadmissible "other crimes" evidence under Miss. Rules of Evidence 404(b). The State cites *Bradley v. State*, 562 So. 2d 1276 (Miss. 1990).

¶32. That case is inapposite here. It deals with allowing into evidence a discussion of future drug deals which were properly considered part of the same continuous transaction or occurrence. In the present case, the trial court allowed in testimony concerning a clearly separate drug deal which had taken place three (3) years earlier.

¶33. Although allowing this testimony into evidence was error, it was nonetheless harmless error given the overwhelming weight of the evidence against Baldwin in this case. *Dennis v. State*, 555 So. 2d 679, 682 (Miss. 1989).

**IX. THE COURT'S REFUSAL TO GRANT THE DEFENDANT'S THEORY OF THE CASE INSTRUCTION AND TO INSTRUCT THE JURY THAT CERTAIN IMPROPER ARGUMENT BY THE STATE SHOULD NOT BE CONSIDERED PREJUDICED THE JURY'S DELIBERATIONS AND DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27 OF THE MISSISSIPPI CONSTITUTION.**

¶34. The ninth issue was not discussed at all in the appellant's brief and, therefore, has been waived.

**X. THE COURT'S IMPROPER CONSIDERATION OF THE STATE'S EVIDENCE OF AGGRAVATION, NAMELY THE DEFENDANT'S PENDING CHARGES OF CAPITAL MURDER AND INTIMIDATING A WITNESS AND THE RESULTING SENTENCE**

**IMPOSED BY THE COURT, DENIED THE DEFENDANT DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § § 14, 26 AND 27, OF THE MISSISSIPPI CONSTITUTION AND HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED BY THE 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

¶35. Finally, at Baldwin's sentencing, the State requested as part of its aggravation portion of the sentencing process that the trial court take judicial notice of the other charges pending against Baldwin. The trial court did then take judicial notice of those charges. Baldwin argues that these outstanding charges against him were distinct and unrelated matters of which he has not been found guilty. Yet again, Baldwin fails to cite any authority to support his argument and, therefore, fails to meet his burden on appeal. *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977); *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982).

¶36. Even assuming arguendo that this matter were properly before the Court, still Baldwin would lose. This Court in *Jackson v. State*, 551 So. 2d 132, 149 (Miss. 1989), held:

> Our law has long provided that the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, subject only to statutory and constitutional limitations. So long as these are not offended, we rarely interfere. Moreover, the Court is not limited to the consideration of evidence presented of record at trial when imposing sentence.

Therefore, the trial court was not in error in taking judicial notice of its own court records and viewing other pending charges against Baldwin as this is not specifically prohibited by statute or the Mississippi Constitution.

## CONCLUSION

¶37. For all of these foregoing reasons, the judgment of the Circuit Court of Lowndes County is affirmed.

¶38. **CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY-EIGHT (28) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $50,000 AFFIRMED.**

**SULLIVAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS AND McRAE JJ., CONCUR IN RESULT ONLY. PRATHER, C. J., NOT PARTICIPATING.**